UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:16-CR-030 |
| | ) | |
| ANGIE MICHELLE RUCKER | ) | |

## MEMORANDUM AND ORDER

Now before the Court is the defendant's *pro se* 18 U.S.C. § 3582(c)(1)(A)(i) motion for compassionate release, as supplemented. [Docs. 429, 432 ex. A]. The United States has responded in opposition to the motion [doc. 447] and the defendant has not replied within the time allowed by this court's Local Rules. For the reasons that follow, the motion will be denied.

## I.    BACKGROUND

In February 2017, this Court sentenced the defendant to a 97-month term of imprisonment for conspiring to distribute and possess with the intent to distribute methamphetamine. The defendant is presently housed at FMC Lexington with a projected release date of January 25, 2023. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited October 28, 2020). She now seeks compassionate release based on post-offense rehabilitation, the COVID-19 pandemic, and various health conditions including diabetes, hypertension, and asthma.[1]

---

[1] The motion also asks for "a transfer to home confinement to complete the remainder of my sentence," citing The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and a 2020 memorandum issued by Attorney General William Barr. By order entered May 7, 2020, the Court explained that neither the CARES Act nor the Barr Memorandum grant any authority to the judiciary. [Doc. 430].

## II.    DISCUSSION

Section 3582(c)(1)(A)(i) allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Beyond this change, the statute still applies the same requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. *See United States v. McGraw*, No. 2:02-cr-00018-

2

LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id*. at *2 (citations omitted).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

## A. Exhaustion

In this case, the record demonstrates that the defendant has previously asked the BOP to file a compassionate relief motion on her behalf. [Doc. 432, ex. 1]. Thirty days have passed since that request was received by the warden of her facility. [*Id.*]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

### 1. Extraordinary and Compelling Reasons

The Application Notes to guideline 1B1.13 provide, in material part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)     The defendant is—

    (I)     suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1.

The defendant has filed BOP medical records in support of her motion. [Doc. 432, ex. 1]. Based on her documented diagnoses of diabetes, hypertension, and asthma, the United States concedes that the defendant has met her burden of showing an "extraordinary and compelling reason" for compassionate release. [Doc. 447, p. 9]. The Court's analysis therefore turns to § 3582(c)(1)(A)(i)'s and policy statement 1B1.13's remaining requirements.

4

## 2. Danger to Any Other Person or to the Community

The Court concludes that the defendant has not shown that she would not be a danger if released at this time. For that reason, her motion must be denied.

Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

5

18 U.S.C. § 3142(g).

The Court has considered the above-listed factors and has refamiliarized itself with the defendant's Presentence Investigation Report ("PSR"). [Doc. 204]. The Court has also considered the defendant's BOP SENTRY Report.

SENTRY shows that the defendant has obtained a GED during her current term of imprisonment. She has also participated in a meaningful amount of vocational programming. Conversely, the defendant incurred a disciplinary sanction *during the pendency of the instant motion* for interfering with taking count.

On the whole, the SENTRY report is favorable, and the defendant is commended for that. The Court finds this fact to be outweighed, however, by the defendant's personal and criminal history. In this case, the defendant was an active participant in a large-scale methamphetamine distribution conspiracy for almost two years. [Doc. 204, ¶ 8]. She sold methamphetamine and oxycodone from her home. [*Id.*, ¶¶ 9-16]. She sold methamphetamine "on an almost daily basis from her residence" and had "a steady amount of customers." [*Id.*, ¶¶ 15-16]. She possessed a loaded firearm and was able to travel to a nearby town to meet with a methamphetamine supplier. [*Id.*, ¶¶ 14-17]. She maintained "an operational video surveillance system to assist and add protection for the drug trade." [*Id.*, ¶ 14]. Without question, the defendant's crime presented a substantial danger to the community, and she was able to engage in her extended misconduct notwithstanding—in her own words—being "100% disabled since 1991." [Doc. 432, ex. 1, p. 6].

The Court also notes the defendant's prior convictions for being an accessory after the fact to voluntary manslaughter and for being a habitual traffic offender. [Doc. 204, ¶¶

40-41]. In their own way, each is a serious and dangerous crime. Further, substance abuse has been a recurring issue throughout the defendant's adult life, even after the point that she became "100% disabled." [*Id.*, ¶ 57].

The defendant's troubling criminal conduct (much of it, again, occurring after she purportedly became 100% disabled) leaves the Court unable to find that she would not pose a danger to the safety of another person or the community if released at this time. For this reason, the defendant's motion must be denied.

### 3. Section 3553(a) Factors

The facts underlying a review of the 18 U.S.C. 3553(a) factors in this case are essentially the same as those considered in the preceding section of this memorandum. The requested sentence reduction in this case would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. *See* 18 U.S.C. § 3553(a)(2). For these additional reasons, the defendant's compassionate release request must be denied.

## III.    CONCLUSION

Having considered the issues raised by the defendant, individually and in combination, the Court concludes that her motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [doc. 429] must be and is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

_____
s/ Leon Jordan
United States District Judge

7